IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  12-cv-02383-RM-MJW

TEWODROS G. JEMANEH,

Plaintiff,

v.

THE UNIVERSITY OF WYOMING;
THE UNIVERSITY OF WYOMING COLLEGE OF HEALTH SCIENCES;
THE UNIVERSITY OF WYOMING SCHOOL OF PHARMACY;
TOM BUCHANAN, in his individual and official capacities;
NELL RUSSELL, in her individual and official capacities;
JOSEPH F. STEINER, in his individual and official capacities;
DAVID L. JONES, in his individual and official capacities;
JOHN H. VANDEL, in his individual and official capacities;
BEVERLY A. SULLIVAN, in her individual and official capacities;
JAIME R. HORNECKER, in her individual and official capacities;
JANELLE L. KRUEGER, in her individual and official capacities;
CARA A. HARSHBERGER, in her individual and official capacities;
AMY L. STUMP, in her individual and official capacities;
AGATHA CHRISTIE NELSON, in her individual and official capacities;
KATHLEEN A. THOMPSON, in her individual and official capacities; and
MARIA A. BENNETT, in her individual and official capacities,

Defendants.

---

**RECOMMENDATION ON
DEFENDANTS' MOTION TO DISMISS ALL REMAINING CLAIMS
(Docket No. 91)**

---

**MICHAEL J. WATANABE
United States Magistrate Judge**

This case is before this court pursuant to an Order Referring Case (Docket No. 3)

issued by Judge William J. Martinez on September 11, 2012.  This matter was

reassigned to Judge Raymond P. Moore on May 1, 2013 (Docket No. 77).

**PLAINTIFF'S CLAIMS**

Pro se plaintiff Tewodros Jemaneh's Complaint (Docket No. 1) contains fourteen claims for relief.  Claims 1 through 9 allege various violations of 42 U.S.C. § 1983.  Claims 10 and 11 allege violations of 42 U.S.C. § 1985(3).  Claim 12 alleges a violation of 42 U.S.C. § 1986.  Claim 13 alleges intentional infliction of emotional distress.  Finally, Claim 14 alleges negligent infliction of emotional distress.

On May 30, 2013, Judge Moore entered an Order (Docket No. 83) dismissing Claims 1, 2, 3, 6, 9, 10, and 11 as against the University of Wyoming, the University of Wyoming College of Health Sciences, the University of Wyoming School of Pharmacy, and all defendants in their official capacity.  In addition, Claim 12 was dismissed in its entirety.

**PENDING MOTION**

Now before the court for a report and recommendation is Defendants' Motion to Dismiss All Remaining Claims (Docket No. 91), filed on June 11, 2013.  Therein, defendants argue that all of plaintiff's remaining claims should be dismissed.  The court has carefully considered plaintiff's Complaint (Docket No. 1) and Defendants' Motion to Dismiss All Remaining Claims (Docket No. 91).  As of the date of this recommendation, plaintiff has not filed a response to Defendants' Motion to Dismiss All Remaining Claims (Docket No. 91).  In addition, the court has taken judicial notice of the court's file, and has considered the applicable Federal Rules of Civil Procedure and case law.  The court now being fully informed makes the following findings of fact, conclusions of law, and recommendations.

3

Under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss pursuant to Rule 12(b)(6) alleges that the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Id. at 555 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. "[A] plaintiff must 'nudge [] [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss. . . . Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting Twombly, 550 U.S. at 570).

The Tenth Circuit Court of Appeals has held "that plausibility refers 'to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" Khalik v. United Air Lines, 671 F.3d 1188, 1191 (10th Cir. 2012). The court has further "noted that '[t]he nature and

4

specificity of the allegations required to state a plausible claim will vary based on context.'" Id.  The court thus "concluded the Twombly/Iqbal standard is 'a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do.'" Id.

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in the plaintiff's favor.  Morse v. Regents of the Univ. of Colo., 154 F.3d 1124, 1126-27 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996).  However, "when legal conclusions are involved in the complaint 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to [those] conclusions' . . . ."  Khalik, 671 F.3d at 1190 (quoting Ashcroft v. Iqbal, 556 U.S. 662 (2009)).  "Accordingly, in examining a complaint under Rule 12(b)(6), [the court] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable."  Id.

Plaintiff is proceeding pro se.  The court, therefore, reviews his pleadings and other papers liberally and holds them to a less stringent standard than those drafted by attorneys.  Trackwell v. United States Government, 472 F.3d 1242, 1243 (10th Cir. 2007).  See Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (holding allegations of a pro se complaint to less stringent standards than formal pleadings drafted by lawyers).  However, a pro se litigant's conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based.  Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).  A court may not assume that a plaintiff can prove

facts that have not been alleged or that a defendant has violated laws in ways that a plaintiff has not alleged.  Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983).  See Whitney v. New Mexico, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (stating a court may not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf); Drake v. City of Fort Collins, 927 F.2d 1156, 1159 (10th Cir. 1991) (stating a court may not construct arguments or theories for the plaintiff in the absence of any discussion of those issues).  The plaintiff's pro se status does not entitle him to application of different rules.  Wells v. Krebs, 2010 WL 3521777, at *2 (D. Colo. Sept. 1, 2010).

## Claims 1 and 2

First, defendants argue that Claims 1 and 2 should be dismissed for failure to state a violation of the First Amendment.  Plaintiff's Claims 1 and 2 allege that defendants retaliated against plaintiff for exercising his right to freedom of speech under the First Amendment.  Specifically, plaintiff alleges defendants retaliated against him for a statement he made to Defendant Thompson, by assigning him failing grades, vy terminating him from the program, and by denying his appeal of the termination.

A plaintiff must allege three elements to show a First Amendment retaliation claim: (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.  Worrell v. Henry, 219 F.3d 1197, 1212 (10th Cir. 2000).

6

In addition to the above elements, a plaintiff is generally required to show that the constitutionally protected speech is a matter of public concern.  The Tenth Circuit has not yet determined whether the public-concern requirement applies to the Worrell test.  See Leverington v. City of Colo. Springs, 643 F.3d 719, 734 (10th Cir. 2011).  However, in Leverington, the Tenth Circuit placed the burden on the plaintiff "to establish that the public-concern test does not apply to a free-speech retaliation claim under Worrell."  Id. at 733.  Furthermore, the Tenth Circuit, citing the Supreme Court, underscored the importance of the public concern inquiry:

> [N]ot all speech is of equal First Amendment importance, however, and
> where matters of purely private significance are at issue, First Amendment
> protections are often less rigorous.  That is because restricting speech on
> purely private matters does not implicate the same constitutional concerns
> as limiting speech on matters of public interest: [T]here is no threat to the
> free and robust debate of public issues; there is no potential interference
> with a meaningful dialogue of ideas; and the threat of liability does not
> pose the risk of a reaction of self-censorship on matters of public import.

Id. at 733-34 (quoting Snyder v. Phelps, 131 S. Ct. 1207, 1215-16 (2011)).

Here, plaintiff has not responded to defendants' contention that public-concern requirement applies to the Worrell test.  In view of plaintiff's failure in this regard, and the importance placed on the public-concern requirement by the Tenth Circuit, the court finds that plaintiff is required to show that his alleged constitutionally protected speech is a matter of public concern.

Whether a statement is a matter of public concern is a question of law.  Baca v.

Sklar, 398 F.3d 1210, 1219 (10th Cir. 2005).  "Matters of public concern are those of interest to the community, whether for social, political, or other reasons."
Brammer–Hoelter v. Twin Peaks Charter Academy, 492 F.3d 1192, 1205 (10th Cir. 2007) (internal quotation marks omitted); see also City of San Diego v. Roe, 543 U.S. 77, 83-84 (2004) ("[P]ublic concern is something that is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public at the time of publication.").  Whether speech addresses a matter of public concern must be determined by the content, form, and context of a given statement.  Connick v. Myers, 461 U.S. 138, 147-48 (1983).  The court "may focus on the motive of the speaker and whether the speech is calculated to disclose misconduct or merely deals with personal disputes and grievances unrelated to the public's interest."  Leverington, 643 F.3d at 727.  Courts "construe 'public concern' very narrowly."  Flanagan v. Munger, 890 F.2d 1557, 1563 (10th Cir. 1989).

The alleged constitutionally protected speech detailed by plaintiff in his Complaint involves expressing his personal opinion to Defendant Thompson.  Plaintiff alleges that Defendant Thompson asked him "how he thought he [was] doing [in Defendant Thompson's rotation] and about Thompson's evaluation of him."  Docket No. 1, p. 26.  Plaintiff alleges that he responded as follows: "I believe that I am not yet where I would like to be.  I know that I have to improve in certain areas.  At the same time I feel like you have very high expectations for interns."  Docket No. 1, p. 26-27.  Plaintiff contends that this statement to Defendant Thompson resulted in the alleged retaliation.  Specifically, plaintiff alleges that Defendant Thompson "mischievously exaggerated and took out of context [plaintiff's] personal opinion and retaliated against [plaintiff] by

assigning him a failing grade." Docket No. 1, p. 27.

Clearly plaintiff's above statement is not a matter of public concern. The statement was made in a private conversation between plaintiff and Defendant Thompson. It involves plaintiff's academic performance and Defendant Thompson's standards for interns. It cannot be possibly said that plaintiff's statement is of interest to the larger community. The statement is plainly one that deals with a personal dispute/grievance. To argue that a private academic discussion between a professor and his or her student implicates a matter of public concern, and therefore implicates a constitutionally protected activity, is completely without merit. As such, as a matter of law, the court finds that plaintiff's speech is not a matter of public concern, and plaintiff has therefore failed to state a claim for retaliation for exercising his right to freedom of speech under the First Amendment. Plaintiff's Claim 1 and 2 should be dismissed for this reason.

## Claim 3

Next, defendants argue that Claim 3 should be dismissed for failure to state a violation of the First Amendment. Plaintiff's Claim 3 alleges that he received a failing grade from Defendant Thompson in retaliation for plaintiff's refusal to sign a remediation plan provided by Defendant Thompson.

In his Complaint, plaintiff identifies the specific paragraph in the remedial plan he alleges contains "Compelled Speech, Compelled Confession, Compelled Silence and Compelled Agreement." Docket No. 1, p. 32, 83. The "compelled confession" portion of the paragraph is the statement: "**As a result of my performance**, I recognize and

understand that I am currently failing this rotation . . . ."  Docket No. 1, p. 32 (emphasis in original).  The "compelled speech" portion of the paragraph is the statement: "accept the responsibility to improve my knowledge and **behaviors** to successfully complete this rotation."  Docket No. 1, p. 32 (emphasis in original).  The "compelled silence" involves "the 'behavior' [Defendant] Thompson required [plaintiff] to 'improve' as a condition 'to successfully complete the rotation,' referring to the types of personal opinion or speech that [Defendant] Thompson would not allow [plaintiff] to express."  Docket No. 1, p. 33.  Finally, the "compelled agreement" involves statements in the remedial plan that plaintiff would be assessed each week, would not pass the rotation if he did not adhere to the plan, and fully understood the magnitude of the agreement.  Docket No. 1, p. 33.

For substantially the same reasons as stated in the previous section, the court finds that speech implicated in Claim 3, namely the statements made in the remedial plan as outlined above (and plaintiff's refusal to agree to them), do not implicate a matter of public concern.  It cannot be possibly said that the statements contained in the remedial plan are of interest to the larger community.  As such, as a matter of law, the court finds that the statements do not implicate a matter of public concern, and plaintiff has therefore failed to state a claim for retaliation for exercising his right to freedom of speech under the First Amendment.  Plaintiff's Claim 3 should be dismissed for this reason.

**Claims 4 and 5**

Next, defendants argue that Claims 4 and 5 should be dismissed for failure to state a violation of the First Amendment.  Read liberally, Claims 4 and 5 allege discrimination based on race and national origin in violation of 42 U.S.C. § 2000d.

10

Title VI of the Civil Rights Act states that "[n]o person in the United States shall, on the grounds of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.

To establish a prima facie case of discrimination under Title VI, a plaintiff must show that: (1) he is a member of a protected class; (2) he suffered adverse action; and (3) he was treated less favorably than similarly situated individuals not members of his protected class. Budendwa v. Regional Transp. Dist., No. 12-cv-01711-PAB-CBS, 2013 WL 1222307, at *5 (D. Colo. Mar. 22, 2013). Furthermore, Title VI only proscribes intentional discrimination. Alexander v. Sandoval, 532 U.S. 275, 279 (2001).

Defendants argue that plaintiff has failed to provide any specific, non-conclusory supporting facts to show that defendants engaged in intentional discrimination. The court agrees with defendants.

Plaintiff's Complaint, although very lengthy and laden with facts, does not contain any specific, non-conclusory facts which demonstrate that any of the defendants actions were motivated by racial animus. Neither does plaintiff's Complaint contain any specific, non-conclusory facts demonstrating that defendants acted with an intent to discriminate against plaintiff. As noted by defendants, plaintiff provides no comments, statements, or actions to support his bald allegation of intentional discrimination. Simply put, plaintiff states that he received two failing grades, and, without any supporting facts, surmises that his failing grades must have been the result of intentional discrimination. This is clearly inadequate to "nudge [his] claims across the line from conceivable to plausible." Khalik, 671 F.3d at 1190. As such, the court finds that plaintiff has failed to

11

state a claim for discrimination based on race and national origin in violation of 42

U.S.C. § 2000d.  Plaintiff's Claims 4 and 5 should be dismissed for this reason.

## Claim 6

Next, defendants argue that plaintiff's Claim 6 should be dismissed for failure to

state a violation of his Equal Protection and Due Process rights.

*Equal Protection*

The Equal Protection Clause requires that no state "deny to any person within its

jurisdiction the equal protection of the laws."  U.S. Const. Amend. XIV.  The

fundamental guarantee of the Equal Protection Clause is that "all persons similarly

situated shall be treated alike."  City of Cleburne Texas v. Cleburne Living Center, 473

U.S. 432, 439 (1985).  The Equal Protection Clause does not forbid classifications, but

simply prevents government decision makers from treating differently persons who are

in all relevant respects alike.  Juarez v. Renico, 149 F. Supp. 2d 319, 324 (E.D. Mich.

2001).  To properly allege an equal protection claim, a plaintiff must plead sufficient

facts to "demonstrate that he has been treated differently from others with whom he is

similarly situated and that the unequal treatment was the result of intentional or

purposeful discrimination."  Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002).  See

also Harris v. McRae, 448 U.S. 297, 323 n. 26 (1980) (the challenged disparate

treatment must be the result of purposeful discrimination).

As noted in the previous section, plaintiff's Complaint does contain any specific,

non-conclusory facts demonstrating that defendants acted with an intent or purpose to

discriminate against him.  As such, the court finds that the Equal Protection portion of

Claim 6 should be dismissed.

12

*Procedural Due Process*

The Fourteenth Amendment's Due Process Clause provides that no state shall "deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. Amend. XIV, § 1.  The Court analyzes procedural due process claims in two steps.  See Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989).  "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient."  Id.

In his Complaint, plaintiff details the procedures afforded him regarding his grades and eventual termination from the program.  Plaintiff appealed the grade he received in Pharmacokinetics, which resulted in a change from a D to a C.  Docket No. 1, p. 11-2.  As to the academic problems associated with his Internal Medicine I rotation, plaintiff was provided with a remediation plan and extra assistance.  Docket No. 1, p. 17, 26.  In addition, plaintiff was given the opportunity to request an "incomplete" instead of a failing grade.  Docket No. 1, p. 23.  Finally, plaintiff was afforded a hearing prior to his termination from the program.  Docket No. 1, p. 64.

Based on those and other procedures outlined in plaintiff's Complaint, the court finds that plaintiff has failed to state a claim for a violation of his procedural due process rights.  Specifically, the court finds that the procedures afforded plaintiff were appropriate under the circumstances.  This is especially true in view of the less stringent procedural requirements placed on schools when making an academic judgment about a student (as opposed to a disciplinary action).  See Harris v. Blake, 798 F.2d 419, 423 (10th Cir. 1986) (citing Bd. of Curators of Univ. of Missouri v. Horowitz, 435 U.S. 78

13

(1978)); <u>see also</u> <u>Trotter v. Regents of Univ. of New Mexico</u>, 219 F.3d 1179, 1184-85 (10th Cir. 2000).

The court also notes that, to the extent plaintiff alleges defendants failed to comply with their own procedures, such a failure, by itself, does not give rise to a constitutional claim. <u>See</u> <u>Trotter</u>, 219 F.3d at 1185. As such, the court finds that the procedural due process portion of Claim 6 should be dismissed.

*Substantive Due Process*

"[T]he Due Process Clause is not a guarantee against incorrect or ill-advised government decisions." <u>Camuglia v. City of Albuquerque</u>, 448 F.3d 1214, 1222 (10th Cir. 2006) (internal quotation omitted). An arbitrary deprivation of a liberty or property right may violate the substantive component of the Due Process Clause if the arbitrariness is extreme. <u>Id.</u> "The plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." <u>Id.</u> (internal quotation marks omitted). A high level of outrageousness is required. <u>See</u> <u>id.</u> at 1223.

The court finds that the adverse actions of which plaintiff complains do not rise to the level of conscience-shocking behavior. Plaintiff's Complaint details the numerous individuals and processes involved in the review of plaintiff's grades and eventual termination. The court cannot find that defendants' adverse actions, in view of such a thorough process, are outrageous and conscience-shocking. As such, the court finds that plaintiff has failed to state a substantive due process claim, and that portion of Claim 6 should be dismissed. Accordingly, the entirety of Claim 6 should be dismissed for the above reasons.

14

**Claims 7 and 8**

Next, defendants argue that plaintiff's Claims 7 and 8, made pursuant to 42

U.S.C. § 1981, must be dismissed for failure to state a claim.

Claims made pursuant to  42 U.S.C. § 1981 must allege intentional/purposeful

discrimination motivated by race.  See Roe v. Keady, 329 F.3d 1188, 1192 (10th Cir.

2003); Reynolds v. School District No. 1, Denver, Colo., 69 F.3d 1532, 1532 (10th Cir.

1995); Harris v. American Medical Intern., Inc., 982 F.2d 528, at *5 (10th Cir. 1992).  As

noted in the previous sections, plaintiff's Complaint does contain any specific, non-

conclusory facts demonstrating that defendants acted with an intent or purpose to

discriminate against him.  As such, the court finds that Claims 7 and 8 should be

dismissed.

**Claim 9**

Next, defendants argue Claim 9 should be dismissed because it is unintelligible

and does not provide fair notice of the basis of the claim as required by Fed. R. Civ. P.

8, and because plaintiff has failed to state a claim.

It is not entirely clear what type of claim plaintiff is trying to assert in Claim 9.

Claim 9 is titled "§ 1983 Tampering with Evidence."  Docket No. 1, p. 103.  Claims made

pursuant to 42 U.S.C. § 1983 require a violation of a right secured by the Constitution

and laws of the United States.  West v. Atkins, 487 U.S. 42, 48 (1988).  Liberally

construed, it appears to the court that plaintiff is asserting a denial of access to the

courts claim, based on the alleged tampering of evidence by various defendants.  This

seems reasonable as plaintiff makes mention of access to the court within the claim.

The Supreme Court has identified two categories of access to the courts claims:

"forward looking claims" and "backwards looking claims."  Christopher v. Harbury, 536

U.S. 403, 413 (2002).  As explained by the Tenth Circuit, forward looking claims are

cases where official action frustrates a plaintiff's ability to bring a suit at the present

time.  Jennings v. City of Stillwater, 383 F.3d 1199, 1208 (10th Cir. 2004).  "Classic

examples include suits claiming that the denial of law library privileges prevents

prisoners from effectively filing claims of alleged prison abuse."  Id.  Backwards looking

claims "arise when plaintiffs allege that a specific claim 'cannot be tried (or tried with all

the evidence [because of past official action] caused the loss or inadequate settlement

of a meritorious case.'"  Id. (quoting Christopher, 536 U.S. at 413-14).

Here, it is clear that plaintiff is not asserting a forward looking claim.  Plaintiff

does not allege that defendants' actions have prevented him from bringing a suit at the

present time.  Rather, plaintiff is asserting a backwards looking claim related to the

alleged tampering with evidence by the various defendants.  To assert a backwards

looking claim, the "plaintiff must identify a nonfrivolous, arguable underlying claim . . .

and must describe the officials' acts frustrating the litigation."  Christopher, 536 U.S. at

415 (internal citations and quotations omitted).  In his Complaint, plaintiff identifies three

discrete incidents of alleged tampering with evidence.

First, plaintiff alleges that Defendant Sullivan's suggestion that plaintiff "request

an incomplete grade and a leave of absence was intended to cause a technical

termination of [plaintiff] from the program and to tamper with the evidence and to deny

[plaintiff] access to court."  Docket No. 1, p. 106.  Second, plaintiff alleges that

Defendant Jones attempted to silence plaintiff which constituted tampering with

evidence.  Docket No. 1, p. 106.  Third, plaintiff alleges Defendant Vandel's "action in

disregarding the evidence was intended to tamper with the evidence." Docket No. 1, p.
106.

The court finds these allegations are plainly insufficient to support an access to
the court claim. It is simply impossible to construe any of these allegations as some
form of tampering with evidence; these are not the types of actions which can support a
denial of access to the courts claim. Like in Christopher, plaintiff has "gone no further
than the protean allegation that [Defendants'] false and deceptive information and
concealment foreclosed Plaintiff from effectively seeking adequate legal redress." 536
U.S. at 418. Indeed, plaintiff's allegations do not even reach the level of deceptive
information or concealment on the part of defendants. Rather, plaintiff's allegations are
simply alleged actions taken against plaintiff which are then baldly characterized as
tampering with evidence. Such a characterization is completely unsupported and
largely illogical. Accordingly, the court finds that plaintiff has failed to state a denial of
access to the courts claim, and Claim 9 should be dismissed.

**Claims 10 and 11**

Next, defendants argue Claims 10 and 11 should be dismissed for failure to state
a conspiracy claim under 42 U.S.C. § 1985(3).

The elements of a 42 U.S.C. § 1985(3) conspiracy claim are: (1) a civil
conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities;
(3) an act in furtherance of conspiracy; and (4) an injury or deprivation resulting
therefrom. Tilton v. Richardson, 6 F.3d 683, 686 (10th Cir. 1993). To meet the first
element of a § 1985(3) claim and state a claim for civil conspiracy, a plaintiff "must
allege specific facts showing agreement and concerted action among the defendants."

17

Durre v. Dempsey, 869 F.2d 543, 545 (10th Cir. 1988).  It is not enough for a plaintiff to merely state that defendants engaged in a conspiracy.  See id. ("Conclusory allegations of conspiracy are insufficient . . . ."); Sieverding v. Colo. Bar Ass'n, No. Civ. A.02–M–1950 (OES), 2003 WL 22400218, at *18 (D. Colo. Oct. 14, 2003) (holding that the plaintiffs' "conclusory statements with regard to the existence of conspiracies surrounding every event that they allege" fails "to allege specific facts that fulfill the requirements of the elements of a state law claim for civil conspiracy" and are "insufficient to state a claim").  In addition, 42 U.S.C. § 1985(3) only applies to "conspiracies motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'"  Tilton, 6 F.3d at 686 (quoting Griffin v. Breckenridge, 403 U.S. 88, 101-02 (1971)).

The court finds plaintiff has failed to meet to first element of a 42 U.S.C. § 1985(3) conspiracy claim.  Plaintiff's conspiracy claim consists of a series of actions taken regarding plaintiff's eventual termination from the program, and conclusory statements regarding a conspiracy among defendants to discriminate against him due to his race and national origin.  See Docket No. 1, p. 106-12.  Plaintiff provides no specific, non-conclusory factual allegations showing agreement and concerted action among defendants.  In addition, as pointed out by defendants, there is no "overt act" that demonstrates that a conspiracy existed.  Instead, plaintiff's allegations consist of normal communications among defendants who are in the process of terminating a student from a program.  Furthermore, as explained above, plaintiff has failed to plead an equal protection claim or other claim based upon discrimination.  As such, there is no underlying claim to form the basis of a conspiracy claim.  See Thompson v. City of

18

Lawrence, Kan., 58 F.3d 1511, 1517 (10th Cir. 1995) (stating absent an underlying

claim for a violation of a federally protected right, a plaintiff cannot state a claim for

conspiracy).  Accordingly, the court finds that plaintiff has failed to state a conspiracy

claim, and Claims 10 and 11 should be dismissed.

**Claims 13 and 14**

Finally, defendants argue Claims 13 and 14 must be dismissed because claims

for intentional infliction of emotional distress and negligent infliction of emotional distress

are barred under the Wyoming Governmental Claims Act ("WGCA"), Wyo. Stat. § 1-39-

104.

Under the WGCA, a "governmental entity and its public employees while acting

within the scope of duties are granted immunity from liability for any tort" except those

provided in the statute.  Wyo. Stat. § 1-39-104(a).  "Governmental entity" is defined as

"the state [of Wyoming], University of Wyoming or any local government."  Wyo. Stat. §

1-39-104(a)(I).  "Public employee" is defined as "any officer, employee or servant of a

governmental entity, including . . . persons acting on behalf or in service of a

governmental entity in any official capacity."  Wyo. Stat. § 1-39-103.  In addition, a

public employee acting within the scope of their duties is immune from individual liability

under the WGCA.  See Brockman v. Wyoming Dept. of Family Services, 342 F.3d 1159,

1169 (10th Cir. 2003).

Neither the tort of intentional infliction of emotional distress nor the tort of

negligent infliction of emotional distress are among the exceptions enumerated under

the WGCA.  See Wyo. Stat. §§ 1-39-105 through 1-39-112; Brockman, 342 F.3d at

1169 (stating that the tort of intentional infliction of emotional distress is barred under

the WGCA); <u>Routh v. State ex rel. Wyoming Workers' Comp. Div.</u>, 952 P.2d 1108, 1116 (Wyo. 1998) (stating that the tort of negligent infliction of emotional distress is barred under the WGCA).

All defendants in this matter clearly fall under the "governmental entity" or "public employee" definitions.  Furthermore, the court finds that all acts alleged by plaintiff fall within the scope of duties of the various defendants.  While plaintiff may believe that defendants had some sort of ill intent in their actions, these actions are routine actions for entities and individuals in such circumstances, and thus comfortably fall within the scope of their duties.  Accordingly, the court finds that Claims 13 and 14 are barred under the WGCA, and should be dismissed.


**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that  Defendants' Motion to Dismiss All Remaining Claims (Docket No. 91) be **GRANTED**, and plaintiff's Complaint be dismissed in its entirety.


**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives de novo review of the**

recommendation by the District Judge, <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53

(1985), and also waives appellate review of both factual and legal questions.

<u>Makin v. Colo. Dep't of Corr.</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley v. Hesse</u>,

91 F.3d 1411, 1412-13 (10th Cir. 1996).


Date:  October 28, 2013          <u>s/ Michael J. Watanabe</u>
       Denver, Colorado          Michael J. Watanabe
                         United States Magistrate Judge