**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Raymond P. Moore**

Civil Action No. 12-cv-02383-RM-MJW

TEWODROS G. JEMANEH,

     Plaintiff,

v.

THE UNIVERSITY OF WYOMING,
THE UNIVERSITY OF WYOMING COLLEGE OF HEALTH SCIENCES,
THE UNIVERSITY OF WYOMING SCHOOL OF PHARMACY,
TOM BUCHANAN, in his official and individual capacity,
NELL RUSSELL, in her official and individual capacity,
JOSEPH F. STEINER, in his official and individual capacity,
DAVID L. JONES, in his official and individual capacity,
JOHN H. VANDEL, in his official and individual capacity,
BEVERLY A. SULLIVAN, in her official and individual capacity,
JAIME R. HORNECKER,
JANELLE L. KRUEGER, in her official and individual capacity,
CARA A. HARSHBERGER, in her official and individual capacity,
AMY L. STUMP, in her official and individual capacity,
AGATHA CHRISTIE NELSON, in her official and individual capacity,
KATHLEEN A. THOMPSON, in her official and individual capacity, and
MARIA A. BENNET, in her official and individual capacity,

     Defendants.

---

**ORDER ON DEFENDANTS' MOTION TO DISMISS (ECF NO. 91)**

---

     Plaintiff Tewodros G. Jemaneh, an Ethiopian-American, filed this action alleging he was wrongfully terminated from the pharmacy program at the University of Wyoming in violation of various federal and state laws.  By Order dated May 30, 2013, some of Plaintiff's claims were dismissed.  (ECF Nos. 71 & 83.)  This matter is now before the Court on Defendants' Motion to Dismiss all Remaining Claims ("Motion") (ECF No. 91), filed pursuant to Fed. R. Civ. P.

12(b)(1), (b)(2), and 12(b)(6), seeking dismissal based on failure to state a claim, qualified immunity, Eleventh Amendment immunity, and the Wyoming Governmental Claims Act ("WGCA").  Upon consideration of Defendants' Motion, Plaintiff's Response (ECF No. 128-1), Defendants' Reply, all relevant parts of the Court's file, and the applicable statutes, rules, and case law, the Court **GRANTS** the Motion, but grants Plaintiff leave to refile certain claims as against Defendant Kathleen A. Thompson only.

## I.   PROCEDURAL BACKGROUND

On September 7, 2012, Plaintiff filed this action asserting 14 claims for relief.  In the Complaint, Claims 1 through 9 allege various violations of 42 U.S.C. § 1983.  Claims 10 and 11 allege violations of 42 U.S.C. § 1985(3).  Claim 12 alleges a violation of 42 U.S.C. § 1986.  Claim 13 alleges intentional infliction of emotional distress, and Claim 14 alleges negligent infliction of emotional distress.  (ECF No. 1.)

On February 8, 2013, Defendants filed a motion to dismiss.  (ECF No. 49.)  In this first motion, Defendants argued that: (1) Plaintiff's § 1983 and § 1985 claims (Claims 1-11) should be dismissed against the University defendants and individual defendants in their official capacities based on Eleventh Amendment immunity; and (2) Plaintiff's § 1986 claim (Claim 12) should be dismissed as time-barred.  The first motion to dismiss was referred to the Magistrate Judge for a report and recommendation.

In response to the first motion, Plaintiff asserted that he mislabeled the Fourth and Fifth Claims as § 1983 claims when they are 42 U.S.C. § 2000d claims, and the Seventh and Eighth Claims as § 1983 claims when they are §1981 claims.  (ECF No. 61.)  In his recommendation on

the first motion to dismiss, the Magistrate Judge accepted Plaintiff's categorization of the four

claims.  As categorized, the Magistrate Judge recommended the claims brought under §§ 1983

and 1985 be dismissed based on Eleventh Amendment immunity as against the University

entities and the individual defendants in their official capacities.  The Magistrate Judge also

recommended the § 1986 claim be dismissed as time-barred.  (ECF No. 71.)  No party filed an

objection to the recommendation.  Thereafter, the Court accepted and adopted the

recommendation, dismissing Claims 1, 2, 3, 6, 9, 10, and 11 against the University defendants

and individual defendants in their official capacities; and Claim 12 against all defendants.  (ECF

No. 83.)

      The Motion currently before the Court is filed pursuant to Fed. R. Civ. P. 12(b)(1) (lack

of subject matter jurisdiction), (b)(2) (lack of personal jurisdiction), and (b)(6) (failure to state a

claim), seeking a dismissal of all remaining claims.[1]  As the Motion does not address personal

jurisdiction, that issue will not be considered.

      The Motion was filed over the Plaintiff's objections that a "second" Rule 12(b)(6) motion

to dismiss may not be filed under the Federal Rules of Civil Procedure.  Those objections and

arguments have been addressed and rejected.  Plaintiff continues to object but, as before, the

Court finds the objection without merit.  *See Albers v. Bd. of Cnty. Comm'rs of Jeff. Cnty.*, 771

F.3d 697, 703 (10th Cir. 2014) (Recognizing "Rule 12(h)(2) allows parties to bring the defense

of failure to state a claim in post-answer motions or at trial, and Rule 12(h)(1) expressly exempts

Rule 12(b)(6) motions from its waiver rule.")  Although Defendants' Motion should have been

---

[1] The Motion was initially referred to the Magistrate Judge for a report and recommendation (ECF No. 92).  After the Magistrate Judge issued a Recommendation (ECF No. 125), the Court unreferred the Motion and determined the Recommendation was moot.  (ECF No. 164.)  Therefore, the Motion is before this Court for resolution.

filed pursuant to Rule 12(c) rather than Rule 12(b)(6), the standards for reviewing a Rule 12(c) and 12(b)(6) motion are the same and the misnomer does not affect Plaintiff's substantive rights. *See Ramirez v. Dep't of Corr.*, 222 F.3d 1238, 1240 (10th Cir. 2000); *Albers*, 771 F.3d at 703-04. Accordingly, the Defendants' Motion is properly before this Court for consideration.

Plaintiff's Response also argues Defendants' current Eleventh Amendment immunity argument as to the § 1981 claims (Seventh and Eighth Claims) is time barred because it was not brought in the first motion to dismiss.  Plaintiff's argument, however, fails for a number of reasons.  First, as shown by the procedural history, the Eleventh Amendment argument as to the § 1981 claims could not have been raised in the first motion to dismiss as it was not until the Magistrate Judge issued its Order that Plaintiff's Seventh and Eighth Claims, stated as § 1983 claims in the Complaint, were categorized as § 1981 claims.  Next, as discussed above, Defendants may assert a Rule 12(b)(6) defense under Rule 12(c).  Finally, an analysis of Eleventh Amendment immunity is considered under Rule 12(b)(1), not Rule 12(b)(6).  *See Elephant Butte Irrig. Dist. of N. M. v. Dep't of Interior*, 160 F.3d 602, 607 (10th Cir. 1998) ("We review *de novo* a district court's consideration of subject matter jurisdiction in the context of a Fed. R. Civ. P. 12(b)(1) motion to dismiss based on Eleventh Amendment immunity."); *Webb v. Jones*, No. 12-6250, 525 F. App'x. 773, 775, 2013 WL 2168143, at * 1 (10th Cir. May 21, 2013) (same) (unpublished).  As such, Defendants are not precluded from raising the defense in their Motion.

## II.    OVERVIEW OF ALLEGATIONS[2]

Plaintiff alleges that the persons with whom he came into contact academically during his last year at the pharmacy program at the University of Wyoming engaged in discriminatory or other unlawful conduct.  The persons at issue are three entities and 13 individuals.  Those entities are defendants the University of Wyoming ("UOW"), the University of Wyoming College of Health Sciences ("UWCHS"), and the University of Wyoming School of Pharmacy ("UWSOP") (collectively, the "University").  The individuals are nine "Supervisory Defendants," *i.e.*, Defendants Buchanan, Russell, Steiner, Jones, Vandel, Sullivan, Krueger, Harshberger, and Bennett (Complaint, p. 8), and four instructors (Defendants Hornecker, Stump, Nelson and Thompson) (collectively, "Individual Defendants") (the University and Individual Defendants will collectively be referred to herein as "Defendants").  During the relevant time period, except for Defendant Thompson, the Individual Defendants worked for UOW or UWSOP in Wyoming.  Defendant Thompson is a Caucasian female who worked for the UWSOP as a Clinical Assistant Professor of Pharmacy Practice at the Swedish Family Medicine Residency Program in Colorado.  (Complaint, pp. 7, 39.)

Plaintiff was one of 49 pharmacy students at the UWSOP program.  Plaintiff is an Ethiopian-American, three of the other students are Caucasians, but the 45 other students' races or national origins are unknown.  (Complaint, *e.g.*, pp. 37-39, 49, 67.)  Defendant Thompson

---

[2] At the outset, it should be noted that the Complaint is far from clear as to which claims apply to which Defendants as Plaintiff's allegations are frequently directed against Defendants collectively, presumably seeking to hold them all liable even though no personal involvement is alleged.  In addition, in his Response, Plaintiff asserts that certain claims are also directed against Defendants who are not otherwise named in such claims, as such Defendants were unintentionally omitted.

taught the Internal Medicine I rotation course at Swedish from May 7, 2010[3] to April 1, 2011. (Complaint, p. 7.)  She was apparently the preceptor for three interns, Plaintiff and two Caucasians.  (Complaint, *e.g.*, pp. 37-39, 49, 67.)

Plaintiff alleges he was subjected to two "discriminatory terminations."  The first termination allegedly occurred in the spring of 2010, while the second allegedly occurred in April 2011.  (Complaint, pp. 10, 33, 34, 50, 69.)

Plaintiff asserts his first "discriminative termination" was caused by instructors Stump, Hornbecker, and Nelson,[4] and the Dean of UWSOP, Vandel.  (Complaint, pp. 5, 10-12.) According to Plaintiff, in the spring of 2010, he took the Pharmacokinetics course in which three examinations were given.  Plaintiff received a 91% on his first examination, but his instructors, Defendants Stump, Hornbecker, and Nelson, denied Plaintiff credit for his correct works in the second and third examinations, resulting in a failing grade for the course.  (Complaint, pp. 10-11.)  Dean Vandel thereafter notified Plaintiff that he was terminated from the pharmacy program.  (Complaint, p. 11.)

Plaintiff, however, complained to Defendant Steiner, Dean of UWCHS.  (Complaint, pp. 5, 11.)  He also complained to Dean Vandel and threatened to sue unless he was given additional credit and his termination withdrawn.  Thereafter, Plaintiff was advised that his grade had been changed from a "D" to "C," a passing grade, and Dean Vandel withdrew Plaintiff's termination from the pharmacy program.  (Complaint, pp. 11-12.)

---

[3] Although the date alleged was May 7, 2011, the Complaint as a whole shows the year at issue is 2010. (Complaint, pp. 10, 11.)
[4] Plaintiff alleges there were five instructors, but only identifies three instructors allegedly involved with the termination.  (Complaint, p. 11, ¶29.)

The second alleged "discriminative termination" was made by Defendant Thompson in the Internal Medicine I rotation course.  Defendant Thompson was new, inexperienced, and prone to making mistakes in teaching Plaintiff's class.  (Complaint, pp. 13-15.)  Indeed, Plaintiff's classmates complained about Defendant Thompson's errors which she then had to correct.  (Complaint, p. 15.)  With respect to Plaintiff specifically, Defendant Thompson gave Plaintiff "arbitrary and capricious" grades and then made random changes to such grades.  (Complaint, p. 16.)   She also assigned Plaintiff a failing grade in the clinical and non-clinical sections of the Internal Medicine I course.  (Complaint, p. 17.)  According to Plaintiff, this is how the grade was assigned.

The Internal Medicine course had a midpoint and final evaluation.  (Complaint, p. 17.)  On March 17, 2011, just before the midpoint evaluation, Plaintiff met with Defendant Thompson at her request so that she could observe him working on one of his patients.  (Complaint, pp. 23-24, 39-40.)  Defendant Thompson told Plaintiff that she wanted to do so in order to help him with the course.  Plaintiff's Caucasian classmates were not required to participate in an "observational meeting," but there are no factual allegations showing how his classmates were performing academically.  (Complaint, pp. 39-41.)

After the observation, Plaintiff met with Defendant Thompson in her office where, instead of providing objective criticism or feedback, Defendant Thompson insulted Plaintiff with statements such as he was the "worst" student.   (Complaint, p. 26.)  When Defendant Thompson asked Plaintiff how he thought he was doing academically, Plaintiff expressed his "personal

opinion" that Defendant Thompson had "very high expectations for interns." (Complaint, pp. 26-27.)

On the next day, Friday, March 18, 2011, Defendant Thompson met with Plaintiff for his midpoint evaluation meeting where she gave Plaintiff a failing grade. (Complaint, *e.g.*, pp. 19, 20, 22, 72.) Plaintiff's failing midpoint grade was based in part on Defendant Thompson's observations. (Complaint, pp. 24, 26.) During the evaluation, Defendant Thompson "required" Plaintiff to sign a remediation plan. (Complaint, p. 32.) The remediation plan's provisions, essentially, requested Plaintiff to acknowledge that he was failing his rotation and to accept responsibility for the same; that he would be assessed each week following patient care; that he would not pass if he did not adhere to the plan; and that he understood the magnitude of the plan. (Complaint, pp. 32-33.) Plaintiff, however, refused to sign the plan. (Complaint, pp. 33, 83.)

Plaintiff thereafter submitted "to almost all of the Defendants" complaints of "unfair and discriminative treatment," seeking removal of the failing midpoint grade. (Complaint, pp. 29, 30.) "Defendants," however, rejected Plaintiff's complaints. (Complaint, p. 30.)

On or about April 1, 2011, Defendant Thompson assigned Plaintiff a final failing grade. Plaintiff was officially terminated from the pharmacy program by letter dated April 20, 2011. (Complaint, p. 69.)

Plaintiff asserts that, from the outset, Defendant Thompson denied Plaintiff "equal learning opportunities" based on his race and national origin, as compared to his two Caucasian classmates who were also pharmacy interns. (Complaint, pp. 34-36.) In support of this assertion, Plaintiff alleges that Defendant Thompson did not timely provide Plaintiff *and his*

*classmates* with passwords (Complaint, pp 34-35); did not allow him to take notes *earlier than his scheduled time* at Swedish Medical Center (Complaint, pp. 35-36)[5]; did not allow him to print pages other than the medication list, but believes that Defendant Thompson allowed his classmates to print pages other than the medication list page because she "should have seen" them doing so from her office (Complaint, p. 37); did not allow Plaintiff *and his classmates* to come to the pharmacy interns' office before 7:00 a.m. (Complaint, p. 37); and did not allow Plaintiff *and his classmates* to keep their early hour's access door key (Complaint, p. 71). Plaintiff also believes that Defendant Thompson assigned his two Caucasian classmates a better grade for the Non-Clinical Section of the course, even though his presentation was "far better." (Complaint, p. 37.)

Plaintiff also asserts that, after the March 17, 2011, examination and/or observation, Defendant Thompson asked Plaintiff for the specific patient's monitoring forms from her observation. Thereafter, Plaintiff overheard his two Caucasian classmates discussing selecting patient monitoring forms they wished to submit to Defendant Thompson. Defendant Thompson, however, did not allow Plaintiff to select and submit an additional monitoring form, telling him she had enough documents. (Complaint, p. 38.)

Plaintiff also alleges Defendant Thompson used a "New Point Assignment System," a more stringent system, to evaluate Plaintiff's academic performance but used the USWOP standardized evaluation to evaluate Plaintiff's Caucasian classmates. (Complaint, pp. 17, 29, 43.) Under this system, Plaintiff would be assigned a grade of 100%, 50%, or minus 100%, as the system does not allow any grade in between those three percentages. (Complaint, p. 44.)

---

[5] Plaintiff alleges Defendant Thompson allowed his two Caucasian classmates to take notes, but there are no factual allegations that they were doing so earlier than their scheduled time. (Complaint, pp. 35-36.)

However, according to Plaintiff, Defendant Thompson assigned Plaintiff a failing midpoint grade of 66% (Complaint, p. 42 at ¶122) and a failing final grade of 64% (Complaint, p. 23 at ¶63(i)), showing the more stringent system was *not* used to grade Plaintiff.  The New Point System was also not approved or provided by the UWSOP.  (Complaint, p. 18.)

Because of his termination, Plaintiff did not complete Internal Medicine II and, therefore, could not graduate.  (*See* Complaint, p. 68.)  Plaintiff asserts that a female pharmacy intern had failed Internal Medicine Rotation II and, in order to accommodate her, the UWSOP terminated Plaintiff from the pharmacy program so that she could take his place.  (Complaint, p. 68.)  That rotation was scheduled for April 4-April 29, 2011.  (Complaint, p. 68.)

Plaintiff alleges he was not notified of the UWSOP Grievance Policies, which included a right to appeal his grades, until after he received his final grade.  (Complaint, *e.g.*, p. 52.)  Nonetheless, the policies were received, and Plaintiff utilized them to file complaints of discrimination and to challenge his grades.  Plaintiff was apparently afforded hearing(s) on his complaints.  (Complaint, pp. 55-59, 62-64.)  Defendants Thompson, Krueger, Vandel, Sullivan, and Bennett, however, did not follow one or more of the Grievance Polices.  Further, Defendants Vandel and Krueger had only bachelor's degrees, and Defendant Russell had no formal legal education, but they investigated and decided Plaintiff's disputes.  (Complaint, *e.g.*, pp. 52-55, 57, 59, 60.)  In summary, Plaintiff challenges the qualifications of the final decision makers, and disagrees with the decisions on his complaints, alleging one or more Defendants improperly believed Defendant Thompson's assessment of Plaintiff's performance in affirming his academic dismissal.

### III.    STANDARD OF REVIEW

### A. Fed. R. Civ. P. 12(b)(6) and 12(c)

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion for judgment on the pleadings under Rule 12(c) is determined under the same standard as a motion to dismiss under Rule 12(b)(6). *Ramirez*, 222 F.3d at 1240. Pursuant to Rule 12(b)(6), a complaint must be dismissed if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Id.* at 555 (internal citations and brackets omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* "[A] plaintiff must 'nudge [ ] [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss. . . . Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (internal citation and quotation omitted; italics in original).

The Tenth Circuit Court of Appeals has held "that plausibility refers to the scope of the allegations in a complaint:  if they are so general that they encompass a wide swath of conduct,

much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (internal quotation marks and citation omitted).  The Tenth Circuit has further noted "that [t]he nature and specificity of the allegations required to state a plausible claim will vary based on context."  *Id*.  (Internal quotation marks omitted.)  Thus, the Tenth Circuit "concluded the *Twombly/Iqbal* standard is 'a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the [Supreme C]ourt stated will not do.'"  *Id*.  (quoting *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008)).

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in the plaintiff's favor.  *Morse v. Regents of the Univ. of Colo.*, 154 F.3d 1124, 1126-27 (10th Cir. 1998); *Seamons v. Snow*, 84 F.3d 1226, 1231-32 (10th Cir. 1996).  However, "when legal conclusions are involved in the complaint 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to [those] conclusions' . . . ." *Khalik*, 671 F.3d at 1190 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "Accordingly, in examining a complaint under Rule 12(b)(6), [the court] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable."  *Id*.

### B.  Plaintiff's *Pro Se* Status

Plaintiff is proceeding *pro se*.  The court, therefore, reviews his pleadings and other papers liberally and holds them to a less stringent standard than those drafted by

attorneys.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding a *pro se* complainant's allegations to less stringent standards than formal pleadings drafted by lawyers); *Trackwell v. United States Gov't*, 472 F.3d 1242, 1243 (10th Cir. 2007).  A *pro se* litigant's conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based.  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  A court may not assume that a plaintiff can prove facts that have not been alleged or that a defendant has violated laws in ways that a plaintiff has not alleged.  *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (stating a court may not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf) (citation omitted); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (stating a court may not construct arguments or theories for the plaintiff in the absence of any discussion of those issues) (citations omitted).  The plaintiff's *pro se* status does not entitle him to application of different rules of civil procedure.  *See Hall*, 935 F.2d at 1110; *Wells v. Krebs*, No. 10-cv-00023, 2010 WL 3521777, at *2 (D. Colo. Sept. 1, 2010).

## IV.   ANALYSIS

### A.  Plaintiff's Claims Under 42 U.S.C. § 1983 for Retaliation for Exercise of Free Speech (Claims One and Two)[6]

Plaintiff's First Claim alleges that Defendant Thompson assigned Plaintiff failing grades in retaliation for expressing his personal opinions concerning how he was doing in her class and

---

[6] This claim was dismissed against the University and the Individual Defendants in their official capacity by Order dated May 30, 2013.  Although specific Defendants are identified, Defendants argue that, to the extent Plaintiff argues he unintentionally omitted any of the Individual Defendants, their arguments apply equally to them.  (Motion, p. 4 at n.4.)  The Court agrees.

his belief that Defendant Thompson had high expectations for interns, in violation of his First Amendment rights; and that the "Supervisory Defendants" had authority to address such violation but failed to do so.  (Complaint, *e.g.*, pp. 78-80.)  Similarly, Plaintiff's Second Claim alleges that Defendant Jones also retaliated against Plaintiff for expressing those same personal opinions.[7]  (Complaint, *e.g.*, pp. 81-82.)  Defendants argue these claims should be dismissed because, among other reasons: (1) Plaintiff's speech is not a matter of public concern; and (2) Defendants are entitled to qualified immunity.

In assessing First Amendment retaliation claims against defendants who are not an employer of or a party to a contract with the plaintiff, proof of the following elements are required: "(1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000) (internal quotation marks omitted) (quoting *Lackey v. Cnty. of Bernalillo*, No. 97-2265, 1999 WL 2461, at *3 (10th Cir. Jan. 5, 1999) (unpublished)).  In *Leverington v. City of Colo. Springs*, 643 F.3d 719, 734 (10th Cir. 2011), the Tenth Circuit stated that it need not – and did not – decide whether constitutionally protected speech must be a matter of public concern in the context of a *Worrell* inquiry.

---

[7] Defendants' Motion only specifically addressed Plaintiff's allegations against Defendant Thompson and the Supervisory Defendants, but argues dismissal is appropriate for Claims 1 and 2.  Accordingly, the Court assumes Defendants' arguments are the same with respect to Defendant Jones.

14

*Worrell* and *Leverington* were both decided in the public employment context.  Here, the speech at issue was made in an academic setting.  Prior to *Leverington*, however, in the unpublished decision of *McCook v. Spriner School Dist.*, No. 01-2157, 44 F. App'x. 896, 904, 2002 WL 1788529, *6 (10th Cir. Aug. 5, 2002) (unpublished), the Tenth Circuit applied *Worrell* in the school/education context in a lawsuit brought by the parents of a student.  There, the Tenth Circuit stated "none of the [parents'] criticisms focused on matters of 'public concern,' as required by *Connick [v. Myers]*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 [1983], and therefore none of the [parents'] speech was protected by the First Amendment." *Id.* [8]  Similarly, prior to *Worrell*, in *Marcum v. Dahl*, 658 F.2d 731 (10th Cir. 1981), plaintiffs, university students, alleged that defendant athletic directors at the university refused to renew plaintiffs' athletic scholarships because they made comments to the press concerning a basketball coach. On appeal, the Tenth Circuit concurred with the trial court's finding that plaintiffs' comments to the press were not on matters of public concern and, therefore, were not constitutionally protected by the First Amendment.

Whether a statement is a matter of public concern is a question of law for the court. *Leverington*, 643 F.3d at 726-727.  "'Matters of public concern are those of interest to the community, whether for social, political, or other reasons.'"  *Id.* at 727 (quoting *Brammer–Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1205 (10th Cir.2007)).  In this case, Plaintiff repeatedly alleges that he was expressing his personal opinion, but fails to allege that his speech was a matter of public concern.  Consistent with his allegations, Plaintiff repeatedly argues in his Response that his personal opinion is speech, and that he was retaliated against for

---

[8] *Connick* was decided in the public employment context.

expressing such personal opinions to Defendant Thompson, not in front of others, but during a private conversation concerning his personal academic performance (Response, *e.g.*, pp. 13, 14, 15, 25, 45). As such, his speech did not address a matter of public concern and was, therefore, not protected.

Plaintiff argues, however, that because he was a university student, his speech need not be a matter of public concern, relying on *Axson-Flynn v. Johnson*, 356 F.3d 1277 (10th Cir. 2004) and cases from other jurisdictions. *Axson-Flynn*, however, is inapposite as the claim in that case was for compelled speech in violation of the First Amendment. Here, Plaintiff's claim is for retaliation for expressing his personal opinion to Defendant Thompson. (Complaint, pp. 82-83.) Further, while a court in *another* jurisdiction may have found that a student's speech need not be a matter of public concern, *e.g.*, *Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn*, 280 F.3d 98, 106 (2nd Cir. 2001) (Stating that "the public concern doctrine does not apply to student speech in the university setting…but is reserved for situations where the government is acting as an employer."), Plaintiff fails to show that such is the law in the Tenth Circuit. Accordingly, Plaintiff's speech was not protected by the First Amendment.

In light of this Court's determination that Plaintiff has failed to sufficiently allege a violation of his constitutional rights, it follows that the Individual Defendants are also entitled to qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks and citation omitted). To resolve a claim of

qualified immunity, the Court must consider two elements:  (1) whether a constitutional violation occurred, and (2) whether the right violated was "clearly established" at the time of the violation. *Id*. at 232.  The Court may "exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Id*. at 236; *accord Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011).  "Qualified immunity is applicable unless the plaintiff can satisfy both prongs of the inquiry."  *Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) (internal quotation marks omitted).  Here, Plaintiff fails to satisfy the first prong.

Moreover, even assuming, *arguendo*, that Plaintiff's speech need not be a matter of public concern, Plaintiff has failed to show that the constitutional right to engage in the alleged speech was "clearly established."  In order for a right to be "clearly established," "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right…in the light of pre-existing law the unlawfulness must be apparent." *Worrell*, 219 F.3d at 1215 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) (alterations omitted).  Accordingly, Plaintiff's First and Second Claims should be dismissed for failure to state a claim and based on qualified immunity.

### B.  Plaintiff's Claim for Retaliation for Exercising the Right to Refuse Compelled Speech, Compelled Confession and Compelled Silence (Third Claim)[9]

Plaintiff's Third Claim alleges Defendant Thompson engaged in "academic retaliation" when he refused to sign the remediation plan that contained "compelled speech, compelled

---

[9] This claim was dismissed against the University and the Individual Defendants in their official capacity by Order dated May 30, 2013.  Plaintiff's Third Claim specifically identifies nine individual Defendants in the title of his claim.  Defendants argue that, to the extent Plaintiff argues he unintentionally omitted any of the Individual Defendants, their arguments apply equally to them.  (Motion, p. 11 at n.7.)

confession, compelled silence, and compelled agreement." (Complaint, *e.g.,* pp. 32, 83.)  The

academic retaliation allegedly consisted of assigning Plaintiff an "unfair failing midpoint grade

and final grade," and terminating him from the pharmacy program.  (Complaint, *e.g.,* pp, 32-34,

83.)  The "compelled confession" consisted of the statement that: "'**As a result of my**

**performance**, I recognize and understand that I am currently failing this rotation…'"

(Complaint, p. 32 (bold in original).)  The "compelled speech" consisted of: "'…accept the

responsibility to improve my knowledge and **behaviors** to successfully complete this rotation.'"

(Complaint, p. 32 (bold in original).)  The "compelled silence" arises from "'the 'behaviors' that

Thompson required [Plaintiff] to 'improve' as a condition 'to successfully complete the rotation',

refers to the types of personal opinion or speech that Thompson would not allow [Plaintiff] to

express." (Complaint, p. 33.)  And, the "compelled agreement" consisted of the statements or

acknowledgements in the remediation plan that Plaintiff would be assessed weekly using a

rubric, that he would not pass the rotation if he did not adhere to the plan, and that he understood

the magnitude of his agreement to the plan.  (Complaint, p. 33.)  Here, the constitutional

protected activity claimed is, essentially, not to be subjected to compelled speech.

If, under *Worrell*, the compelled speech is required to be a matter of public concern in

order to be constitutionally protected, Plaintiff's claim fails as his "required" acknowledgement

concerning his private, academic progress is not a matter of public concern.  Plaintiff readily

admits his speech is private.  (ECF No. 128-1, pp. 46-47.)  Plaintiff, however, argues his speech

need not be a matter of public concern, relying on *Axson-Flynn, supra* (ECF No. 128-1, p. 46).

Defendants argue Plaintiff's claim fails under the *Worrell* inquiry, regardless of whether the

"matter of public concern" standard applies.  Defendants argue that professors may legitimately address concerns about a student's progress.  The Court agrees, as recognized in *Axson-Flynn*, upon which Plaintiff relies.

A threshold element of a First Amendment compelled speech claim is "compulsion." *Corder v. Lewis Palmer School Dist. No. 38*, 566 F.3d 1219, 1231 (10th Cir. 2009).  Even if there is compulsion, a school (or university) may do so "as long as the compulsion is related to a legitimate pedagogical purpose." *Corder*, 566 F.3d at 1231; *see Axson-Flynn*, 356 F.3d at 1289. The restrictions need not be the most reasonable or the only reasonable limitations, they only need to be reasonable. *Axson-Flynn*, 356 F.3d at 1292.

> The school's methodology may not be *necessary* to the achievement of its goals and it may not even be the most effective means of teaching, but it can still be "reasonably related" to pedagogical concerns.  A more stringent standard would effectively give each student veto power over curricular requirements, subjecting the curricular decisions of teachers to the whims of what a particular student does or does not feel like learning on a given day. This [the courts] decline to do.

*Axson-Flynn*, 356 F.3d at 1292 (italics in original).  The courts give "substantial deference to educators' stated pedagogical concerns." *Axson-Flynn*, 356 F.3d at 1290 (internal quotation marks omitted).

In this case, assuming a threshold showing of compulsion, Plaintiff's allegations are insufficient to show that the remediation plan was not "reasonably related" to pedagogical concerns.  Plaintiff's own assertions are that Defendant Thompson was an inexperienced and ineffective professor who made numerous errors of which even Plaintiff's classmates complained, that she was highly critical of Plaintiff and failed to provide him with constructive feedback, that she took exception to his personal opinion that she had high expectations of her

interns, and that she required him to be on a remediation plan.  All of these allegations support

the conclusion that the remediation plan was reasonably related to pedagogical purposes.  As

Defendants argue, a professor should be able to address concerns with a student's progress

through a remediation plan.

Plaintiff's conclusory allegations that Defendant Thompson's March 17, 2011,

observation was a "discriminative," "undeclared" examination do not salvage his claim.  Plaintiff

asserts that he was similarly situated to his 48 classmates, but there are no factual allegations to

support this bald assertion.  (Complaint, p. 83.)  The factual allegation that his other two

classmates (who had Defendant Thompson as a preceptor) were Caucasians, without more, does

not support the conclusion that the remediation plan was discriminatory.[10]

In summary, regardless of whether the student's speech is required to be a matter of

public concern, the Court finds that, under the allegations pled, Plaintiff's speech was not

"compelled speech," was not a matter of public concern, and was not constitutionally protected.

Otherwise, instructors would be constitutionally barred from requesting students to acknowledge

notice of poor academic performance or to confirm educational concerns have been addressed.

The Court recognizes there may be instances where a student's speech constitutes "compelled

speech" subject to constitutional protection, but it need not define the contours of that speech.  It

is sufficient to state that the speech alleged here does not meet that standard.

---

[10] Plaintiff does allege that Defendant Thompson evaluated Plaintiff on the more stringent New Point Assignment
System while evaluating his Caucasian classmates on the UWSOP standardized evaluation.  But, Plaintiff's own
allegations show the system *was not used*.  *See Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)
(recognizing a plaintiff may plead himself out of a cause of action by alleging facts which undermine his claim);
*Blumhagen v. Sabes*, No. 94-8022, 78 F.3d 597 (10th Cir. Mar. 4, 1996) (unpublished) (plaintiff conceded facts
which undercut their claim).

Plaintiff's allegations against the "Supervisory Defendants" are similarly insufficient.  In order to state a claim based on supervisory liability, Plaintiff must not only establish the subordinates violated the Constitution but also demonstrate that "each [supervisor] defendant took some act with the constitutionally applicable state of mind that caused the alleged constitutional violation."  *Dodds v. Richardson*, 614 F.3d 1185, 1200 (10th Cir. 2010); *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013) (setting forth elements a plaintiff must demonstrate).  "It is particularly important that plaintiffs make clear exactly *who* is alleged to have done *what* to *whom*, as distinguished from collective allegations."  *Pahls,* 718 F.3d at 1225 (internal quotation marks and alterations omitted; italics in original).  A plaintiff's "undifferentiated contention that 'defendants' infringed his rights" is insufficient. *Pahls,* 718 F.3d at 1226.  "[I]t is incumbent upon a plaintiff to 'identify *specific* actions taken by *particular* defendants' in order to make out a viable" claim.  *Pahls,* 718 F.3d at 1226 (quoting *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 532 (10th Cir. 1998)) (italics in original).  Plaintiff's allegations fail to do so.  His summary conclusions that "Supervisory Defendants" engaged in some unidentified custom or practice, were "policymakers," or adopted "employees'" discriminatory intent are insufficient to state a claim for compelled speech in violation of  the First Amendment.  Accordingly, Plaintiff's Third Claim fails to state a claim for relief.  And, in the absence of sufficient allegations of a constitutional violation, the Individual Defendants are also entitled to qualified immunity.  *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767-68 (10th Cir. 2013); *Pahls,* 718 F.3d at 1227-1228.

### C. Plaintiff's Claims under 42 U.S.C. § 2000d – Discrimination and Retaliation (Fourth and Fifth Claims)[11]

Plaintiff alleges he was a student and is a member of a protected class, *i.e.*, an Ethiopian American.  In the Fourth and Fifth Claims, Plaintiff asserts that he was "similarly situated in all relevant respects" to his 48 classmates and that some of the Individual Defendants were aware that he filed a "discrimination complaint" in 2010.  Plaintiff's Fourth Claim appears to be based on Defendant Thompson's alleged 2011 "intentional" discrimination against Plaintiff because of his race and national origin, and the Supervisory Defendants' alleged failure to address such discrimination.  Plaintiff's Fifth Claim appears to be based on allegations concerning his failing grade in the Pharmacokinetics course in the spring of 2010 which was changed from a "D" to a "C."  Plaintiff contends his instructors' denial of credit in exams 2 and 3 of the Pharmacokinetics course was based on his race and national origin, and that certain Individual Defendants were policymakers or had authority to address such discrimination but failed to do so.  Plaintiff also asserts that Defendant Hornecker retaliated against Plaintiff for opposing discrimination by denying him credit for his correct work in exam 3.  Defendants argue Plaintiff fails to state a claim for retaliation or discrimination.  The Court agrees.

First, Plaintiff's bare allegation that Defendant Hornecker "retaliated" against Plaintiff for opposing discrimination is insufficient to state a claim for retaliation.  There are no factual allegations in support of such alleged retaliation.  This bare allegation is also contradicted by

---

[11] Plaintiff's Fourth Claim identifies Defendants Buchanan, Russell, Steiner, Jones, Vandel, Sullivan, Krueger, Harshberger, and Thompson, and the Fifth Claim identifies Defendants Vandel, Hornecker, Stump, Nelson and John/Jane Doe 1 & 2.  However, Plaintiff's Response asserts Defendant Bennett was unintentionally omitted from these claims (Response, p. 34 at n.8, p. 35 at n.9).  Regardless, Defendants argue that, to the extent Plaintiff asserts he unintentionally omitted Defendants not specifically named, their arguments apply to the omitted Defendants as well.  (Motion, p. 15 at n.9 & n.10.)

other allegations.  For example, there are no allegations that Plaintiff "opposed discrimination" *prior* to exam 3.  (Complaint, p. 11.)  Instead, Plaintiff alleges that it was *after* his exam 3 when he complained about his grade and "warned" that he was going to sue.  Further, there are no allegations that he complained of discrimination when he threatened to sue.  (Complaint, pp. 11-12.)  Instead, there is only a naked allegation that Plaintiff's termination as a result of the failing grade was "discriminative," which does not suffice to state a claim.

Similarly, Plaintiff has failed to plausibly plead a claim for discrimination under Title VI. Under Title VI of the Civil Rights of Act of 1964, "[n]o person…shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. §2000d.  In order to state a prima facie case of discrimination, a plaintiff must show: (1) that he is a member of a protected class; (2) that he suffered an adverse action; and (3) that similarly situated comparators were treated differently.[12]  *See Buhendwa v. University of Colo. at Boulder*, No. 05-1526, 214 F. App'x 823, 828, 2007 WL 241283, at *4 (Jan. 30, 2007) (unpublished); *MacKenzie v. City & Cnty. of Denver*, 414 F.3d 1266, 1277 (10th Cir. 2005). Title VI, however, reaches only instances of intentional discrimination.  *Alexander v. Sandoval*, 532 U.S. 275, 281 (2001).

In this case, there are insufficient specific, nonconclusory factual allegations to support the inference that Plaintiff's grades were the product of intentional discrimination concerning his

---

[12] In *Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1173 (10th Cir. 2005), the Tenth Circuit indicated that "a prima facie case may not require a 'similarly-situated person' comparison at all," and that the broader requirement of "a showing of 'circumstances giving rise of an inference of discrimination'" may be sufficient.  In this case, although Plaintiff has chosen the "similarly-situated person" comparison to establish the third factor of a prima facie case (Complaint, *e.g.*, p. 4), the Court need not reach this factor as it finds the allegations of intentional discrimination insufficient.

2010 Pharmacokinetics course grade from his "five instructors." Instead, there is the bare allegation that their actions were "discriminative." As such, Plaintiff's Fifth Claim fails to state a claim for relief.

As to Defendant Thompson, she gave Plaintiff the failing grade in Internal Medicine I in 2011, but Plaintiff does not assert that Defendant Thompson made any references to, or comments concerning, his race or national origin. Instead, Plaintiff alleges numerous actions, much of it innocent, which are insufficient to support the inference that Defendant Thompson graded Plaintiff based on her assessment of Plaintiff's academic abilities, assessments to which Plaintiff disagreed. Such assessments, even if erroneous, are consistent with Defendant Thompson's duties as Plaintiff's professor and do not violate any of Plaintiff's rights under Title VI. There are, however, a few allegations which, properly pled with sufficient factual support, may nudge Plaintiff's claim across the line from conceivable to plausible. Here, for example, Plaintiff alleges that Defendant Thompson would not allow Plaintiff to take notes at an earlier than his scheduled time. Although Plaintiff alleges that his classmates were allowed to take notes as much as they wanted, there are, for example, no factual allegations as to whether they were doing so earlier than their scheduled time (as Plaintiff had done), or that Plaintiff was also precluded from taking notes during his scheduled time. Such pleading deficiencies against Defendant Thompson may be curable by amendment and, as ordered below, Plaintiff will be allowed to do so.

Defendants also contend that the Individual Defendants are entitled to qualified immunity. Subject to potential amendment as referenced above, the Court agrees. On this

record, Plaintiff has failed to demonstrate that these Defendants violated any statutory or

constitutional rights and/or failed to sufficiently allege any personal involvement.  *See Schneider*

*v. City of Grand Junction Police Dep't*, 717 F.3d at 767-68; *Pahls*, 718 F.3d at 1227-1228.

Accordingly, Plaintiff's Fourth and Fifth Claim are subject to dismissal for failure to state a

claim under Title VI, and because the Individual Defendants are entitled to qualified immunity.

As stated, however, Plaintiff will be allowed to amend his Fourth Claim as against Defendant

Thompson.

### D.  Plaintiff's Claim under 42 U.S.C. § 1983 for Violation of Equal Protection and Due Process (Sixth Claim)[13]

In the Sixth Claim, Plaintiff alleges that ""Defendants" denied him equal protection and

due process on the basis of his race and national origin.

### 1.  The Supervisory Defendants

As an initial matter, Defendants argue that Plaintiff's claim against the Supervisory

Defendants must be dismissed based on supervisory liability for failure to show a nexus between

the alleged constitutional violations and Defendants who Plaintiff claims are responsible; for

failure to allege personal involvement by the Supervisory Defendants; and for failure to allege

the required state of mind.  As previously discussed, Plaintiff must sufficiently allege that "each

[supervisor] defendant took some act with the constitutionally applicable state of mind that

caused the alleged constitutional violation." *Dodds*, 614 F.3d at 1200.  In this case, Plaintiff has

---

[13] This claim as against the University and the Individual Defendants in their official capacities were dismissed by Order dated May 30, 2013.  What remains are Plaintiff's claims against the Individual Defendants.  Plaintiff's claim is stated to be directed against Defendants Buchanan, Russell, Steiner, Jones, Vandel, Sullivan, Krueger, Harshberger, Thompson, and Hornecker (Complaint, p. 94), but his Response states he unintentionally omitted Defendants Stump, Nelson, and Bennett.  (Response, p. 37 at n. 11.)  Defendants assert their arguments apply equally to the omitted Defendants.  (Motion, p. 19 at n.13.)

failed to do so.   Instead, as with his other allegations concerning the Supervisory Defendants, Plaintiff fails to identify who did what, relying on collective allegations.   Accordingly, Plaintiff's allegations against the Supervisory Defendants are insufficient to state a claim.   *Pahls*, 718 F.3d at 1226.

### 2.   The Equal Protection Claim

Defendants argue that Plaintiff has failed to sufficiently allege the elements of an equal protection claim, and that they are entitled to qualify immunity.   Again, subject to potential amendment as against Defendant Thompson, the Court agrees.

The Equal Protection Clause provides that "[n]o state shall ... deny to any person within its jurisdiction the equal protection of the laws."   U.S. Const. amend. XIV, § 1.   This Clause directs that "all persons similarly situated should be treated alike."   *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985); *see Coal. for Equal Rights, Inc. v. Ritter*, 517 F.3d 1195, 1199 (10th Cir. 2008).   In order to plead an equal protection claim, a plaintiff "must demonstrate that the defendant's actions had a discriminatory effect and were motivated by a discriminatory purpose."   *Marshall v. Columbia Lea Regional Hosp.*, 345 F.3d 1157, 1168 (10th Cir. 2003).   A plaintiff must allege that the defendant intentionally discriminated against him. *See Lindsey v. Thomson*, No. 06-7114, 275 F. App'x 744, 746, 2007 WL 2693970, at *3 (10th Cir. Sept. 10, 2007) (unpublished).

Plaintiff alleges he was similarly situated in all relevant aspects to his 48 classmates who graduated in May 2011.   (Complaint, p. 94.)   There are, however, insufficient factual allegations to support this bare allegation.   Allegations that two (or three) of his classmates were Caucasians,

standing alone, are insufficient to show he was treated differently.  Allegations that he was

allegedly subjected to the New Point Assignment System which would only allow grades of

100%, 50%, or minus 100%, fail to support his claim where his other allegations show he

received a grade of 64% and 66%.  (Complaint, pp. 23, 42, 44.)  "[A] *pro se* complainant can

plead himself out of court by pleading facts that undermine the allegations set forth in his

complaint," *Henderson v. Sheahan*, 196 F.3d at 846, as Plaintiff has done so here.  Plaintiff's

allegations that his dismissal from the pharmacy program resulted from discrimination suffer

from the same defect – the failure to sufficiently allege conduct by Defendants constituting

discrimination.  In short, Plaintiff fails to sufficiently plead factual matter to support his

conclusory allegations that he was similarly situated, that he was treated differently, or that

Defendants intentionally discriminated against him.  A complaint will not suffice "if it tenders

naked assertions devoid of further factual enhancement." *Ashcroft*, 556 U.S. at 678 (internal

quotation marks and alterations omitted).  And, in addition, in the absence of allegations

demonstrating a violation of a constitutional right, the Individual Defendants are entitled to

qualified immunity.  *Pearson*, 555 U.S. at 231-232; *see Leverington*, 643 F.3d at 732.

Accordingly, Plaintiff's equal protection claim is subject to dismissal for failure to state a claim

and qualified immunity.

However, for the reasons stated in the Court's analysis of the Fourth Claim, the Court

will allow Plaintiff to amend his Complaint to plead additional factual matters in support of his

Sixth Claim based on equal protection against Defendant Thompson.  For example, among other

matters, factual allegations in support of his conclusion that the other 48 pharmacy students are similarly situated are required.

### 3. Procedural Due Process Claim

Plaintiff alleges that Defendants deprived him of his property and liberty interest in pursuing a Doctor of Pharmacy degree without due process. Plaintiff argues he had a property interest[14] in "continuing" his enrollment in the School of Pharmacy under the Wyoming Constitution and "by contract," citing to a number of cases. (Response, pp. 47-49.) Defendants argue Plaintiff had no property interest in receiving either a passing grade or a degree from the UWSOP, and, even assuming he had any property interest, he was afforded any process that was due. Defendants, however, provided no discussion or legal authority in support of their argument that no property interest existed. Accordingly, the Court will consider that argument abandoned. *See Cahill v. American Family Mutual Ins. Co.*, 610 F.3d 1235, 1238 (10th Cir. 2010) (the court will not fill the gaps in undeveloped arguments unsupported by citations to relevant authority). The Court will assume, without deciding, that Plaintiff has stated a cognizable property interest and address whether he has sufficiently alleged a deprivation of any process which may be due.

To state an actionable procedural due process claim, a plaintiff must demonstrate: (1) the deprivation of a liberty or property interest; and (2) that he was not afforded an appropriate level of process. *See Ripley v. Wyoming Med. Center, Inc.*, 559 F.3d 1119, 1122 (10th Cir. 2009);

---

[14] Plaintiff's Complaint also contains one allegation that his liberty interest was violated "by Defendant's false stigmatizing information and last minutes termination from the program…." (Complaint, p. 96.) Defendants fail to address this allegation. Plaintiff's Response cursorily references a "liberty" interest without analysis. To the extent Plaintiff has not abandoned his assertion that he has a "liberty" interest, the Court finds Plaintiff's conclusory allegations insufficient to state a claim for violation of due process as to any alleged liberty interest.

*Couture v. Bd. of Educ. of Albuquerque Pub. Sch.*, 535 F.3d 1243, 1256 (10th Cir. 2008).

"When a due process claim is premised on a deprivation of property, the court first must define

the precise nature of the property threatened by the state." *Jennings v. City of Stillwater*, 383

F.3d 1199, 1205 (10th Cir. 2004).

In this case, Plaintiff alleges a property interest is his continued enrollment in the Doctor

of Pharmacy program and the pursuit of, *i.e.,* the receipt of, such degree.  In evaluating the

Defendants' alleged actions in dismissing Plaintiff from the program, the Court is mindful that

"the decision whether to dismiss a student for academic reasons requires an expert evaluation of

cumulative information and is not readily adapted to the procedural tools of judicial or

administrative decisionmaking, and that when judges are asked to review the substance of a

genuinely academic decision, they should show great respect for the faculty's professional

judgment." *Gossett v. Okla. ex rel. Board of Regents for Langston Univ.*, 245 F.3d 1172, 1181

(10th Cir. 2001) (internal quotation marks, alterations, and citations omitted).  Thus, "[w]hen a

school makes an ostensibly academic judgment about a student, the procedural requirements of

the Due Process Clause are satisfied if the student is given prior notice of the deficiencies in his

academic performance and if the challenged decision is careful and deliberate." *Gossett*, 245

F.3d at 1181 (internal quotation marks omitted).  However, prior notice is not always required as

"the timing and content of the notice" will depend on the competing interests involved.  *See*

*Couture*, 535 F.3d at 1257 (quoting *Goss v. Lopez*, 419 U.S. 565, 578-579 (1975)).  A

university's failure to follow its own rules or regulations does not, by itself, give rise to a

constitutional claim for violation of procedural due process.  *Trotter v. Regents of the Univ. of N. M.*, 219 F.3d 1179, 1185 (10th Cir. 2000).

In this case, Plaintiff argues that he was not dismissed for academic reasons but, rather, for an impermissible ulterior motive, *i.e.*, discrimination or retaliation.  But, as discussed above, Plaintiff has failed to sufficiently allege that he was subjected to unlawful discrimination or retaliation.[15]  Instead, as demonstrated by Plaintiff's quotations of alleged statements made by various Defendants, they made an ostensibly academic judgment about Plaintiff's abilities as a pharmacy student.  As such, when courts are asked to review "the substance of genuinely academic decisions," they should exercise judicial deference in favor of the faculty's professional judgment.  *Gossett*, 245 F.3d at 1181.

A review of Plaintiff's Complaint shows he received a failing grade in Pharmacokinetics in the spring of 2010.  Plaintiff appealed, resulting in a grade change from a "D" to a "C." Thereafter, he took the Internal Medicine I rotation course taught by Defendant Thompson. Defendant Thompson advised Plaintiff of a number of academic deficiencies in his performance in the course.  Defendant Thompson asked Plaintiff to meet before his midpoint evaluation, so that she may observe and assist him.  At his midpoint evaluation, Defendant Thompson offered Plaintiff a remediation plan, which he refused to sign.  When Defendant Thompson assigned Plaintiff a failing midpoint grade, he complained to a number of Defendants, and received

---

[15] Here, Plaintiff identified Defendants Thompson (for Internal Medicine I) and Defendants Stump, Hornecker, and Nelson (and two unidentified instructors) (for the Pharmacokinetics course) as the persons who assigned him the failing grades.  Although the Court finds that Plaintiff should be allowed to amend his Fourth Claim and Sixth Claim based on equal protection as against Defendant Thompson, this finding does not lead to the conclusion that amendment should be afforded as to the Sixth Claim for procedural due process.  Plaintiff's allegations are insufficient to sustain a claim that Defendant Thompson owed Plaintiff some procedural due process and failed to provide the same.

numerous responses.  (Complaint, *e.g.*, p. 30.)  Plaintiff was offered a leave of absence and an

opportunity to request an incomplete in the course, but he never requested a leave.  (Complaint,

p. 23.)  When Plaintiff received his final evaluation, he again made complaints, and received

responses.  (Complaint, pp. 31-32.)   Plaintiff appealed to the UWCHS, and the Health Sciences

Student Appeals Board ("HSSAB"), consisting of three students and three faculty members, held

a hearing.  (Complaint, *e.g.*, pp. 62-64)  Plaintiff also complained to the "University's

Affirmative Action Officer," who apparently conducted an investigation which involved taking

testimony and then denied his complaints.  She also advised Plaintiff to file his complaint with

the Office of Civil Rights at the Department of Education and provided him with information to

do so.  (Complaint, *e.g.*, pp. 55-59.)  In light of these, and other, procedures, Plaintiff has failed

to sufficiently allege that he was not afforded any process which was due.

### 4.  Substantive Due Process Claim

Defendants argue that any substantive due process claim fails as none of the actions

alleged could be considered arbitrary, capricious, or conscience-shocking.  Plaintiff relies on his

allegations of an alleged impermissible, discriminatory motive along with the *Regents of the*

*Univ. of Michigan v. Ewing*, 474 U.S. 214 (1985) and *Gossett* decisions.

"[A] plaintiff asserting a substantive due process claim based on an academic decision

must show that the decision was the product of arbitrary state action rather than a conscientious,

careful and deliberate exercise of professional judgment."  *Gossett*, 245 F.3d at 1182 (citing

*Ewing*, 474 U.S. at 224-225).  "A plaintiff may make such a showing by evidence that the

challenged decision was based on 'nonacademic or constitutionally impermissible reasons,'

31

rather than the product of conscientious and careful deliberation." *Gossett*, 245 F.3d at 1182

(quoting *Ewing*, 474 U.S. at 224-25).  In this case, it was the HSSAB's decision that ultimately

resulted in Plaintiff's termination from the program, and Plaintiff has failed to sufficiently allege

factual support for his contention that this decision was based on nonacademic or constitutionally

impermissible reasons.  Instead, Plaintiff relies on the conclusory allegations that the HSSAB

lacked impartiality when those members determined to reject Plaintiff's appeal.  (Complaint, p.

66.)   Plaintiff has, therefore, failed to state a claim for violation of any substantive due process

rights.

> **E.  Plaintiff's Claims under 42 U.S.C. § 1981(a), (b), and (c) for Retaliation and Interference with Right to Make and Enforce a Contract (Seventh and Eighth Claims)**

Defendants argue that, assuming Plaintiff had an implied agreement (contract) with the

University that he would be allowed to continue his education unless terminated for poor

performance or rule violations, Plaintiff's claims nonetheless fail for the following reasons: (1)

the University and Individual Defendants in their official capacities are entitled to Eleventh

Amendment immunity; (2) Plaintiff fails to sufficiently allege the actions complained of were

racially motivated or purposefully discriminatory, which bars such claims against all Defendants;

(3) Plaintiff fails to allege personal involvement, which bars the claims against Defendants

Buchanan, Russell, Steiner, Jones, Vandel, Sullivan, Krueger, and Harshberger; and (4) the

Individual Defendants are entitled to qualified immunity.  Where a defendant asserts Eleventh

Amendment immunity, addressing the threshold jurisdictional issue by the Court is obligatory.

*United States ex rel. Burlaw v. Orenduff*, 548 F.3d 931, 942 (10th Cir. 2008).

**1. Eleventh Amendment Immunity on behalf of the University and Individual Defendants in their Official Capacities**

The Eleventh Amendment ordinarily bars federal court jurisdiction over private suits against a state and their agencies unless Congress has abrogated the states' immunity or the state has waived its immunity. *Blatchford v. Native Village of Noatak  & Circle Village,* 501 U.S. 775, 785-786 (1991); *Pettigrew v. Okla. ex rel. Okla. Dep't of Pub. Safety*, 722 F.3d 1209, 1212 (10th Cir. 2103).  Claims against state officials in their official capacities are also barred as, in essence claims, the claims are against the state entity.  *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).   The immunity applies to preclude a plaintiff from seeking a declaration that a state officer has violated federal rights in the past, or seeking damages.  It does not, however, apply where the plaintiff is seeking prospective enforcement of his federal rights.  *See Ex parte Young*, 209 U.S. 123, 159-160 (1908).

In this case, the requirements for immunity under the Eleventh Amendment are present.  Here, the University is an "arm" of the state, and Plaintiff's suit against the Individual Defendants in their official capacities is, in essence, a suit against the University.  *See Gressley v. Deutsch*, 890 F. Supp. 1474, 1487-88 (D. Wyo. 1994) (finding the University of Wyoming is to be treated as an "arm" of the state).  Plaintiff's Seventh and Eighth Claims are brought under 42 U.S.C. § 1981, but a state's Eleventh Amendment immunity has not been abrogated with respect to § 1981 claims.  *See Ellis v. Univ. of Kansas Med. Center,* 163 F.3d 1186, 1196 & n.13 (10th Cir. 2010); *Patillo v. Larned State Hosp.*, No. 11-3184, 462 F. App'x 780, 783, 2012 WL 256023, at *2 (10th Cir. Jan. 30, 2012) (finding dismissal of § 1981 and other federal claims against state entities correct as immunity had not been abrogated or waived) (unpublished).

Plaintiff does not argue Defendants have waived this defense.[16]  Instead, Plaintiff argues this defense is "time-barred," or is inapplicable because he satisfied the requirements of the Colorado Governmental Immunity Act ("CGIA").  But, the defense is not time-barred, *see* Section I, *supra*, and the CGIA has no application to the Eleventh Amendment immunity defense.  Finally, Plaintiff seeks only damages.[17]  (Complaint, p. 100.)  Accordingly, Plaintiff's Seventh and Eighth Claims under § 1981 against the University and the Individual Defendants in the official capacities are barred by the Eleventh Amendment immunity.  *See Gressley,* 890 F. Supp. at 1487-89 (Eleventh Amendment bars suit for money damages or retroactive relief against University of Wyoming, its president and trustees in their official capacities).

### 2.  Failure to Sufficiently Allege Racial Motivation or Purposeful Discrimination

Section 1981 of 42 U.S.C. provides:

**(a)  Statement of equal rights**

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

**(b)  "Make and enforce contracts" defined**

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

---

[16] To the extent Plaintiff's "time-barred" argument may be construed as a waiver argument, any waiver must be knowing and voluntary, and the test for determining whether there has been a waiver is a stringent one.  *Pettigrew,* 722 F.3d at 1213.  For the same reasons why Defendants' defense is not time-barred, no waiver has been shown.

[17] Plaintiff's prayer for relief also seeks declaratory, injunctive and "other equitable relief," but there is no indication in the Complaint or Response that such relief sought is associated with the § 1981 claim.

**(c)  Protection against impairment**

The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

(Bold in original.)

In order to state a claim under § 1981, Plaintiff must allege: (1) he is a member of a protected class; (2) the defendants intended to discriminate on the basis of race; and (3) the discrimination interfered with an activity protected under § 1981, here, the making and enforcing of an alleged contract.  *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1102 (10th Cir. 2001).  Plaintiff must sufficiently allege that Defendants' actions were intentionally or purposefully discriminatory.  *General Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 389-390 (1982); *see Reynolds v. School Dist. No. 1*, 69 F.3d 1523, 1532 (10th Cir. 1995).

In the Seventh Claim, Plaintiff alleges Defendants Vandel, Hornecker, Stump, and Nelson interfered with his implied agreement with the University that he be allowed to continue his education and awarded a degree absent poor performance or a rule violation.  Plaintiff cursorily alleges that Defendants Hornecker, Stump, Nelson, and two unidentified instructors denied him credit for correct work on his Pharmacokinetics course, and that such denial was based on Plaintiff's race and national origin.  Plaintiff also conclusorily alleges that Defendants Hornecker and Vandel were aware that the grade assigned was a pretext for discrimination. Plaintiff's allegations, however, are unsupported by any factual allegations of discriminatory intent or purpose sufficient to state a claim under § 1981.

Plaintiff's Eighth Claim is similarly deficient.  That claim arises from Defendant Thompson's issuance of a failing midpoint and final grade in the Internal Medicine I rotation

course.  Here, Plaintiff's bare, conclusory allegations are insufficient to show racial, discriminatory animus on the part of Defendant Thompson or the other identified Individual Defendants.  *See Ashcroft*, 556 U.S. at 678 ("Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'") (quoting *Twombly*, 550 U.S. at 557 (internal brackets omitted)).

And, in the absence of factual allegations demonstrating a constitutional or federal violation, Individual Defendants are also entitled to qualified immunity as to both claims.  *See Pahls*, 718 F.3d at 1227 (qualified immunity applies unless plaintiff shows the public official violated plaintiff's constitutional or federal protected rights).

Furthermore, Plaintiff's allegations against the Supervisory Defendants are also deficient as he must not only establish the subordinates violated the Constitution but also demonstrate that "each [supervisor] defendant took some act with the constitutionally applicable state of mind that caused the alleged constitutional violation." *Dodds*, 614 F.3d at 1200.  Plaintiff's allegations fail to do so.  His summary conclusions that "Supervisory Defendants" engaged in some unidentified custom or practice, were "policymakers," or adopted "employees'" discriminatory intent are insufficient to state a claim under § 1981.

Nonetheless, as previously stated, Plaintiff will be allowed to amend his Complaint as to Defendant Thompson, in her individual capacity, as to the Eighth Claim.

**F. Plaintiff's Claim under 42 U.S.C. § 1983 for Tampering with Evidence (Ninth Claim)**

Plaintiff's Ninth Claim alleges Defendants intended to tamper with evidence so as to deny him access to the court.[18]   Defendants assert that Plaintiff has failed to allege facts to show he was denied access to court.  In *Christopher v. Harbury*, 536 U.S. 403 (2002), the Supreme Court identified two categories of "denial of access to courts" claims, which the Tenth Circuit has described as follows:

> [T]he Supreme Court assumed that an "access-to-the-courts" claim existed, and then proceeded to discuss the elements of this assumed claim.  The Court divided access-to-the courts claims into two categories.  The first, termed "forward looking claims," are cases where official action frustrates a plaintiff's ability to bring a suit at the present time.  Classic examples include suits claiming that the denial of law library privileges prevents prisoners from effectively filing claims of alleged prison abuse.  The second class, termed "backwards looking claims," arise when plaintiffs allege that a specific claim "cannot be tried (or tried with all the evidence) because past official action caused the loss or inadequate settlement of a meritorious case."  In this way, the official action is said to have "'rendered hollow the plaintiff's right to seek redress'" in the courts.  At least some courts have conceptualized this harm as a denial of access to the courts.
>
> * * *
>
> While [the Supreme Court] was careful not to endorse the backwards looking claim, it held that an element of any backwards looking claim is for the complaint to "identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought."

*Jennings v. City of Stillwater*, 383 F.3d at 1208-09 (internal brackets and citations omitted).

---

[18] This claim was dismissed against the University and Individual Defendants in their official capacities by Order dated May 30, 2013.  Defendants contend this claim must also be dismissed against the defendants specifically identified in that claim, namely, Defendants Jones, Vandel, Sullivan, Harshberger, and Thompson, in their individual capacities.  And, to the extent Plaintiff unintentionally omitted the remaining Individual Defendants, in their individual capacities (Response, p. 41 at n.15), Defendants contend their arguments apply equally to such omitted Defendants.  (Motion, p. 32 at n.18.)

In this case, Plaintiff does not allege that any Defendant frustrated his ability to bring a suit at the present time; therefore, precluding a "forward looking claim." Instead, Plaintiff appears to be asserting a backwards looking claim, alleging certain Defendants tampered with evidence. The ultimate object in such a claim is "the judgment in the access claim itself, in providing relief obtainable in no other suit in the future." *Christopher*, 536 U.S. at 414. Thus, the plaintiff must identify a "'nonfrivolous, arguable' underlying claim," describe the official's acts frustrating the litigation, and identify a remedy that may be awarded as recompense. *Christopher*, 536 U.S. at 415. "[T]he underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Christopher*, 536 U.S. at 416.

In this case, Plaintiff's allegations fall short. First, Plaintiff alleges Defendant Thompson "forced" him to endorse and sign the "forced confession," *i.e.*, the remediation plan, intending to tamper with evidence. (Complaint, p. 104.) Plaintiff, however, alleges that he, in fact, refused to sign the plan. (Complaint, p. 83 at ¶247.) Second, Plaintiff alleges that Defendant Sullivan suggested Plaintiff request an incomplete grade and a leave of absence, intending to cause Plaintiff's technical termination from the pharmacy program. (Complaint, pp. 105-106.) Third, Plaintiff alleges that Defendant Jones attempted to silence Plaintiff by warning him his academic appeals would not be supported if he continued to raise discrimination. (Complaint, p. 106.) Finally, Plaintiff alleges that Defendant Vandel discarded Plaintiff's 2010 petitions to the UWSOP Student Affairs Committee. (Complaint, p. 106.) These allegations, however, are insufficient to state an access to court claim. The allegations fail to identify an underlying cause

of action that the alleged actions, which appear far from deceptive, had compromised.  The allegations also fail to identify a remedy independent of relief that might be available on the other claims in the Complaint.  Accordingly, Plaintiff has failed to state a claim for denial of access to the courts.

### G.  Plaintiff's Claims for Conspiracy under 42 U.S.C. § 1985(3) (Tenth and Eleventh Claims)[19]

Plaintiff's Tenth and Eleventh Claims allege that Defendants engaged in a conspiracy to violate Plaintiff's constitutional and federal rights, *i.e.*, equal protection, due process, freedom from discrimination, freedom of speech, and right to enforce contracts.  In essence, Plaintiff alleges these Defendants conspired to terminate him from the pharmacy program.  Defendants argue that Plaintiff has failed to state a claim, and that they are entitled to qualified immunity.

In order to succeed on a § 1985(3) claim, Plaintiff must show: (1) the existence of a conspiracy; (2) intended to deny him equal protection under the laws or equal privileges and immunities of the laws; (3) resulting in an injury or deprivation of federally-protected rights; and (4) an overt act in furtherance of the object of the conspiracy.  *Murray v. City of Sapulpa*, 45 F.3d 1417, 1423 (10th Cir. 1995); *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993).  "[A] valid claim must, of course, involve a conspiracy."  *Tilton*, 6 F.3d at 686.  In order to meet the requirements of a conspiracy, "a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants. … Conclusory allegations of conspiracy are

---

[19] These claims against the University and Individual Defendants in their official capacities were dismissed by Order dated May 30, 2013.  Plaintiff did not identify all Individual Defendants in these claim, but asserts that he unintentionally omitted Buchanan, Hornecker, Stump, Nelson and Bennett from Claim 10, and Buchanan, Russell, Steiner, Jones, Sullivan, Krueger, Harshberger, Thompson and Bennett from Claim 11.  (Response, p. 44 at n.17.)  Defendants contend that to the extent Plaintiff argues he unintentionally omitted Individual Defendants, their arguments apply equally to the omitted Defendants.  (Motion, p. 36 at n. 20 & n. 21.)

insufficient." *See Tonkovich*, 159 F.3d at 533 (addressing allegations of conspiracy as a basis for a § 1983 claim). Further, § 1985(3) applies "only to conspiracies motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'" *Tilton*, 6 F.3d at 686 (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 101–02 (1971)).

In this case, Plaintiff has failed to sufficiently allege the element of a § 1985(3) claim. First, Plaintiff's allegations in support of his claim are merely conclusory and do not provide any factual basis to support an agreement or concerted action amongst any of Defendants, much less an agreement motivated by racial or national origin discrimination. Next, Plaintiff's assertions of intent are similarly deficient, as they are nothing more than bare allegations. Third, as the Court found previously in this Order, Plaintiff has failed to sufficiently plead an equal protection or other constitutional or federal claim on which the § 1985(3) claim can be based. Accordingly, Plaintiff has failed to state a claim based on § 1985(3) on his Tenth and Eleventh Claims for relief.

### H.  Plaintiff's State Law Claims for Intentional Infliction of Emotional Distress and Negligent Infliction of Emotional Distress (Thirteen and Fourteenth Claims)

Plaintiff's tort claims based on state law are asserted against all Individual Defendants except for Defendant Bennett. (Complaint, pp. 113, 116; Motion, p. 40 at n. 23; Response, pp. 45 at n.18, 32 at n.6.) Plaintiff alleges these Defendants engaged in various wrongful acts as instructors or administrators for the UW or UWSOP. Defendants argue these claims fail because: (1) they are barred by the WGCA; and (2) Plaintiff has failed to state a claim for intentional or negligent infliction of emotional distress. In light of the Court's agreement that these claims are barred by the WGCA, it need not reach Defendants' second argument.

With certain exceptions not applicable here, "[t]he WGCA grants immunity against tort claims to the State, all local entities, and their officials and employees acting within the scope of their duties, unless that immunity has been expressly waived." *Beus v. Uinta Cnty. Bd. of Cnty. Comm'rs*, No. 04-8013, 143 F. App'x 945, 949, 2005 WL 1840174, at *3 (10th Cir. Aug. 4, 2005); *see* Wyo. Stat. Ann. §§ 1-39-103, 1-39-104(a); *Brockman v. Wyo. Dep't of Family Servs.*, 342 F.3d 1159, 1169 (10th Cir. 2003) (WGCA barred state tort claim of intentional infliction of emotional distress). The immunity covers public employees acting not only within their official capacity but also in their individual capacity. Wyo. Stat. Ann. §§ 1-39-103(a)(iv)(A); *see Brockman*, 342 F.3d at 1169.

In this case, the tort claims fall squarely within the WGCA. The UW, UWSOP, and UWHSC are Wyoming governmental entities, *see* Wyo. Stat. Ann. § 1-39-103(a)(i), and the state law claims are directed against employees of the University. (Complaint, pp. 5-7.) The WGCA has not excepted the tort claims alleged from its coverage. Plaintiff alleges "Defendant institutes' agents" were acting within the "routine course and scope of their employment and official role." (Complaint, pp. 114, 116.) The Court also so finds, as Plaintiff's allegations concern grading, class absences, and/or academic and related appeals. These actions "fall squarely within the scope of duties" of the instructors or administrators. *See Beus*, 2005 WL 1840174 at *3; *Brockman*, 342 F.3d at 1169. Accordingly, the WGCA bars Plaintiff's emotional distress claims.

### I.   Plaintiff's Claims against Defendant Buchanan

As a final argument, Defendants contend Defendant Buchanan, in his individual and official capacities, should be dismissed entirely from this Complaint.  Plaintiff alleges he does not know Defendant Buchanan, the President of UW.  (Complaint, pp. 5, 70.)  But, Plaintiff alleges that he wrote (emailed) a complaint to Defendant Buchanan about discrimination, but that Defendant Buchanan's assistant advised Plaintiff that concerns of unfair treatment based on discrimination are addressed by the University's Affirmative Action Officer, Defendant Russell. The assistant also forwarded Plaintiff's email to Defendant Russell and provided Plaintiff Defendant Russell's phone number.  Plaintiff sent a second email to Defendant Buchanan, and the assistant again advised that Defendant Buchanan did not handle such complaints.  Plaintiff thereafter emailed his complaints to Defendant Russell and copied Defendant Buchanan. Plaintiff alleges that Defendant Buchanan had the authority to address the discrimination but failed to do so.  (Complaint, pp. 75-76.)   Defendants argue such allegations, without more, are insufficient to state any claim against Defendant Buchanan.  The Court agrees.  The Court has previously discussed the bases for dismissal of Plaintiff's claims for failure to state a claim, and for dismissal based on qualified immunity, Eleventh Amendment immunity, and immunity under the WGCA.  For the reasons previously stated, the claims against Defendant Buchanan, in any capacity, are also dismissed.

## V.     CONCLUSION

Based on the foregoing, Plaintiff's remaining claims are dismissed as set forth below. Further, Plaintiff is granted leave to file an amended complaint as to Defendant Thompson, in her individual capacity, as to his Fourth Claim, Sixth Claim for violation of equal protection, and Eighth Claim for relief.  Plaintiff's amended complaint shall set those factual allegations which he contends supports such claims.  Further, without leave of Court, Plaintiff's amended complaint shall not exceed twenty (20) pages.  Repetitive, redundant, or conclusory allegations will not suffice and may be stricken by the Court *sua sponte*.  It is therefore **ORDERED**

1.  That Defendants' Motion to Dismiss (ECF No. 91) is **GRANTED** and Plaintiff's remaining claims are hereby dismissed **with prejudice** as to all Defendants **except** as follows:

    a)  As to the Seventh and Eighth Claims against the University and Individual Defendants (as those terms are defined above) in their official capacities, dismissal based on Eleventh Amendment immunity is **dismissed without prejudice**; and

    b)  As to Defendant Thompson, in her individual capacity, the  Fourth Claim, Sixth Claim based on alleged violation of equal protection, and Eighth Claim are **dismissed without prejudice** with leave to amend as stated in paragraph 2 below;

2.  That Plaintiff is granted until **March 25, 2015**, in which to file an amended complaint as to Defendant Thompson, in her individual capacity, with respect to the Fourth Claim, Sixth Claim for violation of equal protection, and Eighth Claim for Relief only.  **Failure to do so will result in the closure of this case**; and

3.   That all other pending motions are denied as **MOOT**.

DATED this 11th day of March, 2015.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge